IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RUTH LAFERRIERE,                                    Civil No. 07-364-AA
                                                     OPINION AND ORDER
        Plaintiff,

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____

Alan Graf
Alan Stuart Graf, PC
PO Box 98
Summertown, TN 38483
        Attorney for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Britannia Hobbs
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

L. Jamala Edwards
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
        Attorneys for defendant

AIKEN, Judge:

        Claimant, Ruth LaFerriere, brings this action pursuant to

the Social Security Act (the Act), 42 U.S.C. §§ 405(g) and

1    - OPINION AND ORDER

1383(c)(3), to obtain judicial review of a final decision of the
Commissioner denying her application for disability insurance
benefits under Title II of the Act.  For the reasons set forth
below, the Commissioner's decision is reversed and remanded for
payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed her applications for
disability insurance benefits on January 23, 2003.  Tr. 63-65.
She alleged disability since March 3, 2001, based on depression,
fibromyalgia, low back pain, injuries sustained in a fall,
mastectomy, gallbladder surgery, and a hysterectomy.  Tr. 73.
Plaintiff was insured throughout the relevant time period.  Tr.
17, 66.  Her application was denied initially and upon
reconsideration.  Tr. 29-34, 37-40.  An Administrative Law Judge
(ALJ) conducted a hearing on March 15, 2005.  On May 4, 2006, the
ALJ issued a partially favorable decision finding that plaintiff
was disabled beginning March 3, 2001 through October 6, 2005.
Tr. 26.  The ALJ found plaintiff not disabled within the meaning
of the Act after October 6, 2005.  Id.  See 42 U.S.C.
§ 423(d)(1)(A).  On January 11, 2007, the Appeals Council denied
plaintiff's request for review, tr. 7-9, making the ALJ's
decision the Commissioner's final decision.  See 20 C.F.R.
§§ 404.981, 416.481.

## STATEMENT OF THE FACTS

Born in 1957, plaintiff was 48 years old at the time of the
most recent hearing decision.  Tr. 26, 63.  Plaintiff completed
high school.  Tr. 79.  Plaintiff's past work included a vault
clerk, cashier, and cash accounting clerk.  Tr. 22, 74.

2    - OPINION AND ORDER

1    Plaintiff last worked prior to March 3, 2001, her alleged onset
2    date.  Tr. 74.

3                        **STANDARD OF REVIEW**

4         This court must affirm the Secretary's decision if it is
5    based on proper legal standards and the findings are supported by
6    substantial evidence in the record.  Hammock v. Bowen, 879 F.2d
7    498, 501 (9th Cir. 1989).  Substantial evidence is "more than a
8    mere scintilla.  It means such relevant evidence as a reasonable
9    mind might accept as adequate to support a conclusion."
10   Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting
11   Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).
12   The court must weigh "both the evidence that supports and
13   detracts from the Secretary's conclusions."  Martinez v. Heckler,
14   807 F.2d 771, 772 (9th Cir. 1986).

15        The initial burden of proof rests upon the claimant to
16   establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486
17   (9th Cir. 1986).  To meet this burden, plaintiff must demonstrate
18   an "inability to engage in any substantial gainful activity by
19   reason of any medically determinable physical or mental
20   impairment which can be expected . . . to last for a continuous
21   period of not less than 12 months. . . ."  42 U.S.C.
22   § 423(d)(1)(A).

23        The Secretary has established a multi-step sequential
24   evaluation process for determining whether a person's disability
25   has ended.  See 20 C.F.R. §§ 404.1594(f), 416.994(f).  This
26   multi-step process for continuing disability evaluation is
27   similar to the five-step sequential evaluation process used to
28   evaluate initial claims (outlined below), with the addition of

the question of whether medical improvement has occurred.

First the Secretary determines whether a claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1594(f)(1), 416.994(f)(1).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(d), 404.1594(f)(2), 416.920(d), 416.994(f)(2).

In step three the Secretary determines whether there has been medical improvement in plaintiff's condition. 20 C.F.R. §§ 404.1594(f)(3), 416.994(f)(3). Medical improvement is defined as any decrease in the severity of the impairment that was present at the time the individual was disabled or continued to be disabled. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1). A determination that there has been a decrease in medical severity must be based on changes indicative of improvement in relation to symptoms, signs, or laboratory findings associated with the impairment. Id.

In step four, if there has been medical improvement, a determination must be made as to whether such improvement is related to plaintiff's ability to perform work, i.e., whether there has been an increase in her residual functional capacity based on the improvement that was present at the time of the most recent favorable medical determination. 20 C.F.R. §§ 404.1594(f)(4), 416.994(f)(4). Medical improvement is related to the ability to work if there has been a decrease in the severity of the impairment present at the time of the most recent medical decision and an increase in the individual's functional capacity

to perform basic work activities.   20 C.F.R. §§ 404.1594(b)(3), 416.994(b)(3).

If it is determined that there has been no medical improvement or that medical improvement is not related to plaintiff's ability to work, then, at step five, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased. 20 C.F.R. §§ 404.1594(f)(5), 416.994(f)(5).   If medical improvement is shown to be related to plaintiff's ability to work, then a determination will be made under step six to assess whether all of plaintiff's current impairments in combination are severe, i.e., whether they impose more than a minimal limitation on her physical or mental ability to perform basic work activities.   20 C.F.R.§§ 404.1594(f)(6), 416.994(f)(6).

At step seven, if plaintiff's impairment(s) are severe, the ALJ must determine whether plaintiff can perform her past relevant work, either as it was performed in specific settings or as it is ordinarily performed in the national economy. 20 C.F.R. §§ 404.1594(f)(7),416.994(f)(7).

Finally, at step eight, if plaintiff cannot perform her past relevant work, the burden of production then shifts to the Commissioner to prove that there is alternative work in the national economy that plaintiff can perform given her age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1594(f)(8), 416.1594(f)(8).   If plaintiff cannot perform a significant number of other jobs, she remains disabled despite medical improvements.   If she can perform a significant number of other jobs, then disability ceases.   Id.

5    - OPINION AND ORDER

**DISCUSSION**

**1. The ALJ's Findings**

At step one, the ALJ found that plaintiff was not performing substantial gainful activity at any time relevant to the decision. Tr. 21. At step two, the ALJ found that plaintiff did not meet or equal the Listings. Tr. 21. At step three, the ALJ found significant medical improvement. Tr. 23. At step four, the ALJ found that plaintiff's medical improvement significantly improved her functional abilities relating to her ability to work. Tr. 24-25. The ALJ's findings at step three and four made it unnecessary to review step five. At step six, the ALJ determined that plaintiff had severe impairments that consisted of: degenerative disc disease, scoliosis, chronic pain syndrome, history of breast cancer with mastectomy, and adjustment disorder with depression and anxiety. Tr. 21. The ALJ determined that plaintiff had the residual functional capacity to perform sedentary work and could lift 10 pounds. Tr. 24. Finally, at step seven, the ALJ found that plaintiff could perform her past relevant work as a cash accounting clerk. Tr. 25.

**2. Medical Evidence**

In a continuing disability case, the ALJ must consider the severity of plaintiff's impairments at the time of the most favorable decision and, if there was medical improvement, her residual functional capacity at the time of the cessation of benefits. 20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(7). Here, the comparison points are the date of plaintiff's most favorable decision, May 4, 2006, and the initial determination of cessation

of benefits, October 6, 2005.  Tr. 26.

In order for the Commissioner's cessation of benefits to be valid, the Commissioner must show that there has been medical improvement to a substantial enough degree that plaintiff is no longer disabled.  20 C.F.R. § 404.1594.  Medical improvement must be demonstrated by a decrease in medical severity that is based on improvements in the symptoms, signs, or medical findings associated with the impairments.  Id.

In the ALJ's decision dated May 4, 2006, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease, scoliosis, chronic pain syndrome, history of breast cancer with mastectomy, and an adjustment disorder with depression and anxiety.  Tr. 21.  The ALJ found that from March 3, 2001, through October 5, 2005, plaintiff had the residual functional capacity:

> to lift 10 pounds occasionally and less than 10 pounds frequently.  She could stand and work 2 hours of an 8-hour day and sit about 6 hours out of an 8-hour day.  She was limited to occasional overhead pushing, pulling and reaching with left upper extremity.  She was limited to frequent, not constant, handling and fingering.  She could occasionally climb, stoop, crouch and crawl.  She could frequently balance and kneel.  She should avoid concentrated exposure to extreme heat, humidity and vibration.  She was limited to simple, routine, 1-2 step tasks.  She would miss 2 or more days of work per month.

Id.

> The ALJ reasoned that:

> From March 3, 2001, through October 5, 2005, the claimant's statements concerning the limiting effects of her symptoms are generally credible. The claimant sustained multiple injuries in a motor vehicle accident on March 3, 2001. She

required surgical repair of a mandible fracture.
X-rays revealed degenerative disc disease of
the cervical spine at C6-7 but no fractures
(Exhibit 1F). She continued to complain of pain
due to muscle strains. She underwent physical
therapy as well as treatment with Vicodin, Flexiril
and Ibuprofen (Exhibit 4F). She exhibited some of
the trigger points associated with fibromyalgia
in a March 2002 rheumatology evaluation, but not
enough to confirm the diagnosis. She was also
noted to suffer from marked scoliosis (Exhibit 14F-188).
In September 2002 the claimant underwent a left
mastectomy for breast cancer (Exhibit 12F-160). In
May 2003 she reported persistent pain at the incision
site for the mastectomy. Charles May, MD, a treating
rheumatologist, indicated in May 2003 that she would
likely be disabled for 2 to 3 years due to her
multiple medical problems but that she might eventually
be able to return to work (Exhibit 14F-193). At
an April 2003 psychological evaluation the claimant
was diagnosed with an adjustment disorder with mixed
anxiety and depressed mood (Exhibit 13F). Kate Morris,
Ph.D., a treating psychologist, opined in
November 2003 that claimant would be disabled for
at least 1 to 2 years due to her multiple conditions
(Exhibit 26F-265). Robin Chandler, M.D., a treating
physician, opined in October 2003 that claimant's
emotional and physical status would not enable her
to work (Exhibit 29F-291). Mayda Ramos, M.D., another
treating physician, opined in October 2004 that claimant
was unable to work due to her marked scoliosis and
psychiatric disorder resulting in difficulty with
concentration and difficulty interacting with others
(Exhibit 30F-317).  Ms. LaFerriere underwent extensive
surgery for progressive scoliosis on April 18, 2005
(Exhibit 31F-342). The opinions of the claimant's
treating physicians are consistent with the treatment
record and are given significant weight. The opinions
of the State agency consultants have been considered.
However, greater weight is given to the opinions of
the claimant's treating physicians, who have opined
the claimant was unable to work.

Tr. 22.

Given the above residual functional capacity, the ALJ

found that plaintiff could not perform her past work as well as

any other work in the national economy.  Tr. 22-23.  This

finding was based, in part, on the testimony of the VE at the

March 15, 2005, hearing.  Tr. 23-24, 556-58.

The ALJ then reasoned that "medical improvement occurred as of October 6, 200[5], the date the claimant's disability ended." Tr. 23. The ALJ found that plaintiff "experienced improvement in her symptoms following recovery from her surgery for scoliosis. In July 2005 she reported less pain and indicated she was feeling much better overall. On October 5, 2005, she reported continued improvement but indicated she continued to have some pain. On October 11, 2005, she reported she was doing better and was decreasing her use of Oxycontin and Oxycodone." Tr. 23-24 (internal citations omitted).

Plaintiff relies on treating physician Chandler's opinion dated October 21, 2003, that plaintiff has multiple medical and psychological issues. Tr. 456. Dr. Chandler noted plaintiff "had an MVA with head injury," history of breast cancer, chronic pain, fibromyalgia and chronic fatigue. Id. He also noted her scoliosis with recommendations for surgery and a new diagnosis of osteoporosis. Id. Dr. Chandler concluded: "the patient is, in my opinion, disabled. Her emotional and physical status do not enable her to work in any job whatsoever at this time. She would not be able to physically or emotionally handle a job. I do not see this improving in the foreseeable future." Id. (emphasis added).

Plaintiff next points to the testimony of Dr. Robert Bigley who testified as an expert witness for the Social Security Administration. Tr. 553. Dr. Bigley testified that due to chronic pain syndrome, depression and anxiety, and the many surgeries plaintiff had undergone, plaintiff had "marked limitations in the ability to concentrate, persist and stay on

9   - OPINION AND ORDER

pace." Tr. 554. The ALJ recognized and credited Dr. Bigley's
testimony. Tr. 21. Yet, the ALJ found that after October 6,
2005, plaintiff was limited to lifting 10 pounds, standing and
walking 2 hours out of an 8-hour workday and sitting 6 hours in
an 8-hour workday with no limitations in the ability to
concentrate and persist and stay on pace. Tr. 24. During her
period of disability, Dr. Kallemeyn similarly found plaintiff
had significant problems persisting with tasks. Tr. 343. The
record supports plaintiff's position that she continued to have
marked limitations in the ability to concentrate, persist and
stay on task from October 6, 2005, onward.

Moreover, there is evidence in the record that as of April
18, 2005, Dr. Keenan noted that plaintiff is "overall doing
better than before, but continues to have some pain as noted."
Tr. 490. Dr. Keenan also wrote," activities are discussed.
All questions are answered." Tr. 490. The record fails to
specify what activities were discussed. However, plaintiff
testified at the hearing that both Drs. Keenan and Christian
advised her not to return to work. Tr. 546. She also
testified that her doctors limited her to not lifting more than
a gallon of milk and to hold it close to her body when lifting.
Tr. 547. Plaintiff's testimony was not refuted by the ALJ, or
anywhere else in the record. Further, notes from plaintiff's
surgery dated April 5, 2005, indicated a two year recovery
period was expected. Tr. 451. Also, as early as one year
before the date plaintiff was found not disabled, she was still
experiencing "severe anxiety and depression, aggravated also by
pain." Tr. 466. On November 2, 2005, plaintiff was still

10    - OPINION AND ORDER

being prescribed both Oxycontin and Oxycodone for pain with an increase in her Elavil for sleep problems. Tr. 459. On December 6, 2005, FNP Roberts noted that plaintiff "has been taking a lot of pain medicine. She says she can feel the pain over the medication, as well as she can also feel her back pain even through the pain medicine that she is taking." Tr. 458. At the hearing, plaintiff testified that she "feels achy all over, like flu-like achiness." Tr. 534. She experiences daily back pain. Tr. 535. She continues to experience extreme pain and needs to lay down a lot. It takes her longer to do things. Tr. 548, 540. She testified that although she is no longer taking Oxycontin she continues to take Oxycodone. Tr. 539. Finally, plaintiff testified that she has some nerve damage in her mastectomy site and the site aches. Tr. 544. This evidence in the record, when reviewed in its entirety, is not consistent with nor does it support the ALJ's significant increase in plaintiff's residual functional capacity such that plaintiff is now able to work full-time due to medical improvements.

///
///
///
///
///
///
///
///
///

**CONCLUSION**

The Commissioner's decision is not based on substantial evidence.  Therefore, this case is reversed and remanded for payment of benefits.   This case is dismissed.

IT IS SO ORDERED.

Dated this  4   day of June 2008.


_____/s/ Ann Aiken_____
            Ann Aiken
United States District Judge